```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
                                                            :
                                                            :
                                                            :   **MEMORANDUM DECISION AND**
IN RE MOTION FOR CIVIL CONTEMPT                             :   **ORDER**
BY JOHN DOE                                                 :
                                                            :   12-mc-0557 (BMC)
                                                            :
                                                            :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

Before me are motions to unseal documents in the above-captioned docket filed by intervenors The Associated Press and Brian Vodicka, and by Richard Lerner and Frederick Oberlander ("Respondents"). After having reviewed the further submissions by the parties as to 37 documents that remain sealed in this docket, these motions to unseal are granted in part.

## BACKGROUND

The history of this case has been discussed at length in previous Orders, and therefore protracted discussion is unnecessary. In summary, the sealing issues surrounding the documents in this docket can be traced back to the dissemination of sealed documents, commencing with Oberlander's public filing of a civil RICO complaint against Sater and other defendants in the Southern District of New York in May 2010. Attached to the complaint were exhibits that included sealed materials from Sater's criminal case, and the complaint itself contained explicit references to the confidential information in the exhibits. How Oberlander was able to obtain these sealed documents is not entirely clear.

Judge Glasser, who had been presiding over Sater's criminal case, after giving Oberlander and Lerner, acting as Oberlander's lawyer, notice and an opportunity to be heard, issued a permanent injunction against the dissemination of the 2004 presentence report ("PSR"),

and directed Oberlander to return the PSR and destroy any copies in his possession. Over Oberlander's objection, Judge Glasser found that dissemination of the documents would cause irreparable harm to Sater and put Sater's safety at risk.

A panel of the Second Circuit, upon the appeal from Judge Glasser's injunction, appointed me as Special Master for the purpose of enforcing the Second Circuit's February 14, 2011 mandate, specifically, to "ensure the parties' compliance with the orders of [the Second Circuit] and any that have been, or may hereafter be, entered by Judge Glasser." Roe v. United States, 428 F. App'x 60, 63 (2d Cir. 2011). Since the time of the mandate, Judge Glasser unsealed the docket sheet and certain documents in the underlying criminal docket, 98-cr-1101 (ILG), and the miscellaneous docket over which he presided, 12-mc-150 (ILG). See, e.g., United States v. Sater, No. 98-cr-1101 (ILG), ECF Nos. 170 and 220. However, Judge Glasser found that the Government and Sater had met their burden of establishing a compelling interest for the continued sealing of particular documents; he therefore held that the PSR, information sourced from the PSR, and the details of the cooperation agreement must remain sealed. In addition, the Orders themselves discussing the specific reasons for continued sealing were issued under seal, and remain under seal today. See id., ECF Nos. 170 and 221. The sealing of the Order, and of the documents discussed therein, was upheld by the Second Circuit. See Palmer et al. v. John Doe 98-cr-1101, et al., No. 13-2373-cv, p. 3 (2d Cir. 2014) (summary order).

Sater first moved before me on February 10, 2012, to hold the Respondents, now known as Richard Lerner and Frederick Oberlander, in contempt for violating the Second Circuit's February 14, 2011 Court Order and, in turn, the Orders of Judge Glasser. The motion alleged that Respondents disclosed to journalists sealed information regarding Sater's cooperation with the Government in various criminal matters. On August 22, 2012, I directed the creation of a

sealed miscellaneous docket, captioned above, for the civil contempt proceedings commenced by Sater against Lerner and Oberlander. On September 4, 2012, I issued an Order to unseal the case solely to case participants, and ordered that, going forward, all filings concerning the civil contempt proceedings commenced by Sater should be filed under this docket number. Further, after receiving no objections to unsealing the docket sheet, I ordered the docket sheet in this case unsealed, but that the individual documents filed within would remain under seal and available only to case participants.

I directed the creation of a sealed miscellaneous docket in furtherance of my mandate from the Second Circuit. The Orders from the Second Circuit and Judge Glasser had enjoined Lerner and Oberlander, and all persons acting in concert with them, from publicly distributing, or disseminating in any way, documents or contents thereof subject to sealing orders in relevant dockets, including this one. The purpose of the injunctions was to prevent dissemination of information that was sealed, in turn, to prevent the substantial risk of harm to compelling interests as determined by the relevant Court. Sater, in his motion to hold Respondents in contempt, had made a *prima facie* showing that Respondents had violated these injunctions. Further, I was concerned, since he had used the Southern District proceedings as a way to make the sealed documents public, that Oberlander would do the same thing with the contempt proceedings here, thus bootstrapping himself into the position that the injunctions sought to prohibit. Therefore, to ensure compliance with Court Orders and to prevent the Respondents' use of this docket to disseminate sealed information to the public, the documents remained sealed in this docket.

The intervenors' motions to unseal raise the issue of whether the First Amendment mandates unsealing some or all of the documents in the docket, or whether the public's right of

access must yield to other compelling interests. I granted The Associated Press's and Vodicka's motions to intervene, and invited briefing by all parties on the unsealing issue.[1] After receiving submissions from all parties, and holding a public hearing on May 10, 2016, I found that compelling interests outweighed the public's qualified right of access as to certain documents, and unsealed all but 37 documents in this docket. To do so, I created a new public miscellaneous docket, which mirrors that of the above-captioned docket, but allows access to the unsealed documents.[2] See In re Public Documents filed in 12 MC 0557(BMC), No. 16-mc-706 (BMC). As to the 37 documents that would remain sealed, I invited the parties who wished to provide evidence that further unsealing is appropriate as to the remaining documents to submit their positions and evidence, including, if appropriate, proposed redactions, within 14 days of that Order. Respondents and intervenors have filed further submissions, and therefore I am revisiting the sealing Orders in light of those submissions.

**DISCUSSION**

The public has both a common law right of access to judicial documents, as well as a First Amendment right to attend judicial proceedings and to access certain judicial documents. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119–20 (2d Cir. 2006); Hartford

---

[1] I also specifically ordered the Government to show cause why all documents in the docket should not be unsealed, noting its silence on the status of the criminal referrals, despite its presumed interest in keeping certain cooperator information confidential.

[2] This endeavor was not without its administrative difficulties. The large number of documents and the nearly irreversible effect of inadvertently unsealing a document that I intended to remain sealed necessitated allowing any party wishing to continue sealing as to certain documents, or documents containing identical information to those I held would remain sealed at the hearing, to file a supplemental brief within 24 hours of the Minute Entry and Order of the Motion Hearing. See ECF Orders May 11, 2016 and May 12, 2016. After working with the Clerk of Court to find the best method of unsealing these documents, while keeping the settings in place in the above-captioned docket and, given the considerations discussed at the public hearing on May 10, 2106 and herein, I found that the creation of a new docket best ensured compliance with injunctive Orders and the compelling interests underlying those Orders.

Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004); United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II").

For both the common law and the First Amendment, courts must first determine whether the presumption of access applies to the documents at issue. The public's right of access applies only to "judicial documents." See Lugosch, 435 F.3d at 119. Not all documents are judicial documents, and "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I"). "[T]he item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." Id.

Under the common law right of access, the presumption of access attaches at once to judicial documents. See United States v. Gotti, 322 F. Supp. 2d 230 (E.D.N.Y. 2004). In determining whether the public's right of access prevails, courts must balance the Government's interest in confidentiality and privacy against the public's interest in inspection of judicial records and documents. See Nixon v. Warner Commc'ns, 435 U.S. 589, 98 S. Ct. 1306 (1978). However, under the First Amendment, the presumption in favor of public access, once it attaches, applies with greater force. See Newsday LLC v. Cty. of Nassau, 730 F.3d 156 (2d Cir. 2013); Gotti, 322 F. Supp. 2d at 248 (noting that, although the "presumption under the common law attaches at once[,] . . . once the presumption attaches under the First Amendment, its . . . standard is stricter than the common law's more flexible balancing standard").

The public's First Amendment right of access applies only to certain judicial documents. In order to determine whether the First Amendment right of access extends to particular judicial records, the Second Circuit has recognized two approaches. "First, the public has a right to gain

5

access to judicial records (1) that 'have historically been open to the press and general public,' and (2) where 'public access plays a significant positive role in the functioning of the particular process in question.'" In re New York Times Co. to Unseal Wiretap & Search Warrant Materials, 577 F.3d 401, 409 (2d Cir. 2009) (quoting Hartford Courant Co., 380 F.3d at 92); Press-Enter. Co. v. Super. Ct., 478 U.S. 1, 8–9, 106 S. Ct. 2735, 2740 (1986) ("Press-Enterprise II") ("If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches."). Second, the Circuit has held that the First Amendment protects access to judicial documents that are "derived from or a necessary corollary of the capacity to attend the relevant proceedings." Hartford Courant Co., 380 F.3d at 93.

Once the First Amendment right of access attaches, the proponent of sealing must overcome the presumption of access by demonstrating a substantial probability of harm to a compelling interest. See Globe Newspaper Co. v. Super. Ct., 457 U.S. 596, 606–67 (1982); United States v. Aref, 533 F.3d 72 (2d Cir. 2008). The "district court must make specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." See United States v. Alcantara, 396 F.3d 189, 199 (2d Cir. 2005) (internal citations, marks, and alterations omitted); Press-Enterprise II, 478 U.S. at 13–14, 106 S. Ct. 2735; see also Press-Enter. Co. v. Super. Ct., 464 U.S. 501, 510, 104 S. Ct. 819, 824 (1984) ("Press-Enterprise I") ("The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.").

The First Amendment right of access applies to criminal and civil proceedings, including civil contempt proceedings. See Newsday LLC, 730 F.3d at 164. "However, to decide whether

the First Amendment right applies to judicial documents implicated in civil contempt proceedings – as opposed to the proceedings themselves – courts must engage in a case-specific inquiry to determine whether those documents are 'derived from or [are] a necessary corollary of the capacity to attend' the proceedings." Id. (quoting Lugosch, 435 F.3d at 120 (alteration in original)). Only the documents necessary to understand the merits of a civil contempt proceeding are covered by the First Amendment's presumptive right of access. See id.

The complicating factor that this proceeding presents is that the very issue of contempt relates to dissemination of sealed documents. One of these documents is the PSR. As a result, this proceeding's docket contains the PSR in full, and it is explicitly discussed in other documents in this docket. Standing in contrast to the public's right of access to certain judicial documents, and perhaps most importantly to the documents that remain sealed in this docket, courts undertake a separate inquiry when a third party seeks disclosure of a PSR. The relevant analysis is set forth in United States v. Charmer Indus., Inc., 711 F.2d 1164 (2d Cir. 1983). Even aside from the PSR, the issue of whether to unseal other documents in this proceeding, then, also requires me to revisit factual findings made by other Courts, including the Second Circuit, which supported sealing that information in other proceedings.

The documents that remain sealed in this case fall into three general categories: (1) the PSR and/or documents containing information sourced from the PSR; (2) documents sealed in prior or related proceedings; and (3) documents filed by the USAO for the Northern District of New York at my request. I will deal with each type of document in turn.

I. **Access to PSR under Charmer**

The PSR is a document "designed and treated principally as an aid to the court in sentencing." Id. at 1176; see also Roe v. United States, 428 F. App'x at 66 (quoting Charmer

7

Indus., Inc.). As the Second Circuit has discussed in some depth, there are a variety of reasons for keeping information in PSRs confidential:

> Frequently information disclosed to probation officers during the presentence investigation is given to the investigators in confidence. For example, a defendant may disclose his income but not wish to have those figures made public. A psychiatrist may provide an evaluation whose availability would best be restricted to the court and those involved in the defendant's rehabilitation. Law enforcement agencies frequently wish to protect the sources of information in their records and will sometimes exact a promise of confidentiality from the probation officer. In order to ensure the availability of as much information as possible to assist in sentencing, the courts have generally determined that presentencing reports should be held confidential.

Charmer Indus., Inc., 711 F.2d at 1171.

Unlike some other judicial documents, the very nature of the PSR and the information it contains means that the PSR may not properly be disclosed *without authorization by the court*. Charmer Indus., Inc., 711 F.2d at 1176 (emphasis added). In fact, the PSR is not always disclosed to even the defendant in his own criminal action. See Fed. R. Crim. P. 32(e).

Given the importance of keeping the information confidential, there is no First Amendment right of access to PSRs. See Alcantara, 396 F.3d 189. Instead, third parties must make a heightened showing to gain access to these reports, and a "district court should not authorize disclosure of a presentence report to a third person in the absence of a compelling demonstration that disclosure of the report is required to meet the ends of justice." Charmer Indus., Inc., 711 F.2d at 1175.

The intervenors and respondents in this case have not made such a showing. As noted by The Associated Press, and by respondents, certain information – including Sater's and Respondents' real names, Sater's conviction, and Sater's cooperation with the Government – is already available to the public. The parties have not made a compelling demonstration that the full report, or further details contained in the report, must be unsealed to meet the ends of justice.

Any information from the PSR that is not already public is not the subject of these civil contempt proceedings, and therefore not necessary to understand whether Respondents released the information that is public. See Newsday LLC, 730 F.3d at 164. Therefore, I find that the PSR, and any documents containing information sourced from the PSR, must remain sealed.

## II. Documents Previously Sealed in Other Proceedings

Certain documents filed in this case have been sealed in other proceedings, by either the Second Circuit, Judge Glasser, or by a judge in a related criminal case. As noted above, the fact that documents in this court either are documents, or contain information from documents, sealed elsewhere complicates my analysis of the continued sealing of these documents. It creates a matryoshka doll, whereby information from a sealed document is found within another sealed document, which is found within another sealed document, and so on.

In unpacking the information in these documents, some sealed information in the above-captioned docket comes from documents sealed in the Supreme Court, the Second Circuit, or were sealed in the district court and upheld by the Second Circuit. I do not have authority, sitting in the district court as Special Master, to disturb the decisions issued by a higher court. Nor would sealing ever be meaningful if a party could immediately thereafter move to unseal, thereby setting in motion (particularly in cases with litigious parties whose express purposes is to unseal information) a never-ending cycle of briefing and decisions from which to appeal. However, if the circumstances have changed, such that the compelling interests either no longer exist, are no longer subject to a substantial risk of harm, or are no longer effectively protected by sealing, I would find that continued sealing is inappropriate. This is the context of the arguments set forth by the proponents of unsealing, who rely in large part on the fact that some information has already been made available, through whatever means, to the public. In contrast, the

Government and Sater rely on their previous submissions before the relevant Courts to argue that there are compelling interests and that there is a substantial probability of harm to those interests such that sealing is required.

To the extent that the proponents of unsealing argue that the compelling interests previously articulated by Sater and the Government, either in this proceeding or in related proceedings before other Courts, no longer exists, I reject that argument. The small number of details available to the public from Sater's sentencing, newspaper articles, and public statements or press releases, do not make sealing the entirety of his PSR or the proceedings before the Second Circuit public. It is unclear the extent to which Sater or his family, who would have been previously exposed to significant harm had the PSR become public, would still be subject to additional risk through the disclosure of all details of his cooperation. That is not to say the risk does not exist, or that it is not compelling alone to justify the sealing of information in remaining documents on this docket.

More importantly, however, is the Government's unique interest in keeping documents relating to cooperation sealed, even after an investigation is complete. As recognized by the Second Circuit, and by this Court previously, where the release of information is "likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access." Amodeo II, 71 F.3d at 1050. There is no doubt that Sater provided substantial cooperation and extremely valuable information to the Government, during which his safety was at risk. Unsealing the full record of that cooperation would harm the Government's compelling interest in obtaining cooperation, a risk that becomes that much more probable where the cooperator's safety is also a concern. Continued sealing is more than necessary here; to do otherwise would be to "fail to acknowledge

how profoundly the federal criminal justice system relies on cooperators." United States v. Armstrong, No. 11-CR-681, __ F.Supp.3d. ___, ___, 2016 WL 2643041, at *3 (E.D.N.Y. 2016). The risks to Sater himself may have somewhat diminished over time and with the publication of limited information, but that may not be the case for all individuals, and the "government must be able to represent to cooperators that it can and will make efforts to keep the nature and scope of cooperation confidential." Id. at *4.

Both Sater and the Government have compelling interests, both in Sater's safety and the integrity of this and future federal investigations. These interests – particularly when viewed in conjunction with one another – are compelling, and the unsealing of these documents would create a substantial probability of harm to those interests.[3]

Finally, unsealing documents filed in the Second Circuit or the Supreme Court, or the Orders and transcripts of those proceedings, is not "derived from or a necessary corollary of the capacity to attend" the relevant civil contempt proceedings. Hartford Courant Co., 380 F.3d at 93; Newsday LLC, 730 F.3d at 164. The Orders to which Respondents were subject are already unsealed, as are the allegations made against them. Further, the evidence against them will necessarily rely on information that has been made public – indeed, the public dissemination of sealed information is the very basis of the allegations. The only exception to this general finding is that the February 10, 2011 Order by the Second Circuit is unsealed as to the caption and the portion of the Order temporarily enjoining the parties from disseminating sealed information, as this is necessary to attend and understand the contempt proceedings.[4]

---

[3] To the extent that information remaining sealed is already in the public sphere, the public's interest in that information is already served, and would not be furthered by unsealing it here. See id. (quoting United States v. Corbitt, 879 F.2d 224, 240 (7th Cir. 1989)).

[4] This Order is not meant to imply that I have already ruled upon whether the civil contempt proceedings will be open to the public or whether any portion of the transcript will be sealed. That issue is not before me, and I will reach that issue, if necessary, should the parties so move for a closed proceeding and/or sealing. Further, should

The documents that contain information will be redacted or remain sealed accordingly, as set forth in the table in Part IV of this Order.

### III. Documents Filed by USAO-NDNY in the Current Proceeding

The USAO for the Northern District of New York moved for the continued sealing of certain documents filed by them at my direction, and one Order of mine which discusses information contained in those letters. I thereafter Ordered NDNY to file a brief setting forth the interests that would support continued sealing of these documents, and it submitted, *ex parte* and under seal, a supplemental letter pursuant to that Order.[5]

After having reviewed this supplemental filing, I find that the documents submitted to me pursuant to Orders and directives of this Court were not judicial documents within the public's right of access, as they are not "relevant to the performance of the judicial function and useful in the judicial process." Amodeo I, 44 F.3d at 145. These documents do not assist the public in understanding the issues underlying the civil contempt proceeding, and are not "derived from or a necessary corollary of the capacity to attend" the civil contempt proceedings. See Newsday LLC, 730 F.3d at 164. Lastly, this information would not have been provided to the Court had NDNY known it would be made public; the reasons for this are provided in NDNY's supplemental letter, which I accept and adopt in full.

Similarly, ECF No. 39 is an Order that discusses information that is contained in these letters, and which does not assist the public in understanding the civil contempt issues before me, and must also remain sealed to protect the compelling interests set forth by NDNY to support the sealing of the underlying letters.

---

documents remaining sealed become "derived from or a necessary corollary of the capacity to attend" the civil contempt proceedings, the Court will, on motion, revisit those particular documents or redactions.

[5] For the same reasons discussed herein, that document, ECF No. 172, will also remain sealed.

## IV. Redactions and Unsealing of Documents by Document

Consistent with the findings above, and to ensure that the sealing is narrowly tailored, the following documents or portions of documents will remain sealed:

| Document | Pages with Redactions | Reasons for Sealing |
|---|---|---|
| 1-3 | Entire document | Sealed by Court of Appeals, not judicial document |
| 7-2, 21-2, 97-6, 112-10 | Orders (1), (2), (3), (5), (6), (7) | Sealed by Court of Appeals, not judicial document |
| 23, 97-5 | p. 1, 3, 5<br><br>p. 2 until Section II | Safety, details of cooperation |
| 24 | Entire document | Safety, details of cooperation, not judicial document |
| 25 | Entire document | Safety, details of cooperation, discusses information sealed by Court of Appeals, not judicial document |
| 26 | Entire document | Safety, details of cooperation, discusses information sealed by Court of Appeals, not judicial document |
| 39 | Entire document | Not judicial document |
| 47 | pp. 1-17 | Details of cooperation, discusses information sealed by Court of Appeals, not judicial document |
| 69 | pp. 20-21 | Details of cooperation, discusses information sealed |

| | | by Court of Appeals, not judicial document |
|---|---|---|
| **76** | Entire document | Not judicial document |
| **78** | Entire document | Not judicial document |
| **84** | Entire document | Not judicial document |
| **85** | Entire document | Not judicial document |
| **87** | Entire document | Not judicial document |
| **91-1** | pp. 6-9 (beginning first full paragraph until table) | Details of cooperation, previously sealed, not judicial document |
| **97-1** | ¶¶ 6-8, 13, 38 | Discussion of information sealed due to safety, details of cooperation, and because not judicial document; otherwise discusses cooperation |
| **97-10, 112-11** | Entire document | Sealed by Court of Appeals, not judicial document |
| **97-20** | pp. 1-2, Section I<br><br>p. 5, first two paragraphs | Discussion of information sealed due to safety, details of cooperation, and sealed in Court of Appeals; not otherwise judicial document |
| **109-5** | Entire document | Sealed in Supreme Court, information from PSR, not judicial document |
| **112-1** | pp. 2-62 | PSR, not judicial document, personal financial information |
| **122-11** | Entire document | PSR |
| **142-2, 145-1,** | Entire document | Sealed by Court of Appeals, not judicial document |

| 146-1, 160-1 | | |
| --- | --- | --- |
| **146-5** | Entire document | Discusses PSR throughout |
| **153** | pp. 11-13 (beginning first full paragraph until table) | Details of cooperation, previously sealed, not judicial document |
| **172** | Entire document | Not judicial document |
| **177** | pp. 16-17 (beginning "Allegations . . .") | Details of cooperation, previously sealed, not judicial document |

Documents previously sealed that do not meet the standard for sealing, and will therefore be unsealed are ECF Nos. 7, 91-5, and 172-2. Documents will be redacted or unsealed in their entirety and refiled on the public docket.

### V. Procedure for Future Sealing

Given this Court's need to protect further disclosure of sealed information, in accordance with my mandate and with the findings of this Order, the documents on the above-captioned docket will remain available only to case participants and court users. However, in the interest of minimizing delay to the public of documents that should not remain sealed, the following procedure applies for documents filed in the 12-mc-557 docket from this point forward:

- If the party filing a document intends for the document to be sealed, the party must so move at the time of filing for such an Order in accordance with the standard for sealing, after which the Court will rule on the motion;

- If the proponent of sealing is not the party who filed the document, the proponent of sealing must file a motion within 3 days of that documents filing, after which the Court

will rule on the motion. If no motion is filed, the document will be unsealed and moved to the public docket; and

- All parties wishing to seal documents, or portions of documents, in ECF Nos. 187 to 197 must so move within 7 days of the date of this Order. If no motion is filed, the documents will be unsealed and moved to the public docket.

## CONCLUSION

The Government and Sater have carried the burden of establishing that the documents listed in the above table should remain sealed in their entirety or remain sealed as redacted. The Court Orders those documents to remain sealed or redacted as noted in the table. The Court further ORDERS documents found at ECF Nos. 7, 91-5, and 172-2 be unsealed in their entirety. This Order is stayed for 3 days to allow any party wishing to appeal this Order on the basis that further sealing is warranted to seek a further stay from the Court of Appeals.

**SO ORDERED.**

                                                            U.S.D.J.

Dated: Brooklyn, New York
       June 20, 2016